UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DANIEL L. CHASE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20-cv-00287-JAW |
| | ) | |
| CITY OF BANGOR, et al., | ) | |
| | ) | |
| Defendants | ) | |

**ORDER ON MOTION FOR LEAVE TO AMEND COMPLAINT AND MOTION
TO APPOINT COUNSEL/RECOMMENDED DECISION ON DEFENDANTS'
MOTION TO DISMISS**

Plaintiff alleges that Defendants violated his constitutional rights and the Americans

with Disabilities Act in connection with his arrest in April 2018.  (Complaint, ECF No. 1.)

The matter is before the Court on Defendants' motion to dismiss (ECF No. 12), and

Plaintiff's motion to amend the complaint. (ECF Nos. 7, 13-2. 14)[1]

After consideration of the parties' submissions, I deny Plaintiff's motion to appoint

counsel, grant Plaintiff leave to amend the complaint for the limited purpose of reinstating

his claim against the City of Bangor, and recommend the Court grant in part the motion to

dismiss.[2]

---

[1] Plaintiff filed an amended complaint on October 26, 2020.  (ECF No. 7.)  In response to Defendants'
motion to dismiss, Plaintiff also filed other documents regarding the amended complaint.  (ECF No. 13-2.)

[2] Although Defendants City of Bangor, Mark Hathaway, Jermaine Walker, and Jason Stewart move for
dismissal, they were removed as parties on October 26, 2020, when Plaintiff filed an amended complaint
that did not include them among the named defendants.  The motion as to Defendants City of Bangor,
Hathaway, Walker, and Steward, therefore, is moot.  A review of Plaintiff's more recent filings suggests
that Plaintiff did not intend to forego a claim against the City of Bangor. I therefore construe Plaintiff's
motion to amend to request the reinstatement of his claim against the City of Bangor.  The other defendants

## PLAINTIFF'S MOTION TO AMEND

Plaintiff asks the Court "to allow a new complaint created with the assistance of a Court appointed lawyer." (Motion to Amend, ECF No. 13-2, PageID #198.)  Plaintiff also evidently wants to maintain his action against the City of Bangor.  (*Id*. PageID #195.)  As to Plaintiff's request to allow him to file an amended complaint with court-appointed counsel, the Court discerns no reason to reconsider its order denying Plaintiff's prior motion to appoint counsel. (Order, ECF No. 4.)  The Court nevertheless will permit Plaintiff to amend his complaint to reinstate his claim against the City of Bangor. Plaintiff's claim against the City of Bangor set forth in Plaintiff's original complaint is reinstated and incorporated in Plaintiff's amended complaint filed on October 26, 2020.[3] (ECF No. 7.)

## FACTUAL BACKGROUND

The facts below are drawn from Plaintiff's original complaint and his amended complaint, as well as "from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."  *Saccoccia v. United States*, 955 F.3d 171, 172 (1st Cir. 2020) (internal quotation marks omitted); *see Ironshore*

---

who have moved for dismissal are Jeffrey Kinney, Daniel Place, David Farrar, Michael Pina, and Dylan Hall.  Another named defendant, Steven Buzzell, has not appeared in the matter and the record lacks any evidence that he has been served.

[3] Defendant City of Bangor requested dismissal in part due to a lack of proper service.  To the extent Plaintiff has asserted an actionable claim against the City (discussed below), because the City has notice of the claim and has not demonstrated any prejudice from the alleged lack of service, dismissal is not appropriate.  If the City intends to maintain its challenge to service, the City shall so notify Plaintiff within ten days of the date of this order and recommended decision.  If the City notifies Plaintiff of its challenge to service, Plaintiff shall serve the City with the amended complaint within thirty days of the date of this order and recommended decision.

*Specialty Ins. Co. v. United States*, 871 F.3d 131, 135 (1st Cir. 2017) ("[W]hen a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), then the court can review it upon a motion to dismiss." (quotation marks omitted)); *See Waterman v. White Interior Sols.*, No. 2:19-cv-00032-JDL, 2019 WL 5764661, at *2 (D. Me. Nov. 5, 2019) (stating that a court may "consider other filings by a self-represented plaintiff, 'including [the] response to the motion to dismiss, to understand the nature and basis of [his] claims'" (quoting *Wall v. Dion*, 257 F. Supp. 2d 316, 318 (D. Me. 2003)).  A plaintiff's factual allegations are generally deemed true when evaluating a motion to dismiss.  *See McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017) (considering a motion to dismiss pursuant to Rule 12(b)(6)); *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010) (considering a motion to dismiss pursuant to Rule 12(b)(1)).

However, "not every document referred to in a complaint may be considered incorporated by reference and thus introduced by the moving party in support of a motion to dismiss." *Fudge v. Penthouse International, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988); *see Freeman*, 714 F.3d at 36 ("The mere mention of [a document] in the complaint does not amount to sufficient reference." (citing *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985)).  Rather, "for a document to be incorporated into the pleadings, the Court must find that the document is 'referred to in the plaintiff's complaint and . . . central to [a] claim.'" *Goodman v. President & Trs. of Bowdoin College*, 135 F. Supp. 2d 40, 47 (D. Me. 2001) (quoting *Beddall*, 137 F.3d at 17); *see Fudge*, 840 F.2d at 1015 (permitting consideration of an extrinsic exhibit that was "absolutely central" to a plaintiff's

3

complaint).  This requires that "a complaint's factual allegations [be] expressly linked to" and "dependent upon" any such extrinsic document.  *Beddall*, 137 F.3d at 17; *see Clorox Co.*, 228 F.3d at 32 (permitting consideration of "the relevant entirety of a document integral to or explicitly relied upon in the complaint" (quotation marks omitted)).  "Mere relevance to the factual allegations in the complaint is not enough."  *Beaney v. Univ. of Me. Sys.*, No 2:16-cv-00544-JDL, 2017 U.S. Dist. LEXIS 27532, *8 (D. Me. Feb. 28, 2017) (citing *Piampiano v. Cent. Me. Power Co.*, 221 F. Supp. 2d 6, 10 (D. Me. 2002)).

Here, Plaintiff filed several documents in addition to his amended complaint, some of which contain certain factual allegations or are otherwise central to his claims.  (*See* EFC Nos. 1-1, 13-2.)  The documents include transcripts of audio recordings at the scene of Plaintiff's arrest (ECF No. 1-1 at PageID ## 37-64), which transcripts Defendants reference in their motion and acknowledge the Court may consider at this stage of the proceedings. (Motion at 8.)  Other documents, however, are not central to Plaintiff's claims and have not been considered in the analysis of this recommended decision.

On the evening of April 16, 2018, Plaintiff, while operating a motor vehicle, was stopped by Defendant Kinney, an officer with the Bangor Police Department.  (Complaint Exhibit, ECF No. 1-1, PageID #10 ¶ 1; Amended Complaint, ECF No. 7, PageID # 157.)  Plaintiff's car displayed disability license plates.  (Complaint Exhibit, PageID #10 ¶ 1.)  Plaintiff exited his car and repeatedly asked Defendant Kinney why he had been stopped.  (*Id*., PageID ## 38:1, 5, 15-23, 38:7, 10, 12; 41:12-13, 15, 17, 19; 43:16.)  Defendant Kinney asked Plaintiff several times to return to his car.  (*Id*., PageID # 38:2-16.)  Plaintiff did not comply with Defendant Kinney's request.  (*Id*., PageID # #38:2-39:11.)  Defendant

4

Kinney ordered Plaintiff to turn around and place his hands behind his back.  (*Id*., PageID # 39:11.)  When Plaintiff did not comply, Defendant Kinney hit Plaintiff in the chest, which contact Plaintiff claims snapped the top of his spinal fusion at the T-11 T-12 disc.  (*Id*., PageID # 10 ¶ 3.)  Plaintiff then fell to the ground.  (*Id*.)  Defendant Kinney picked up Plaintiff and pushed him against the car.  (*Id*. ¶ 4.)

Plaintiff told Defendant Kinney several times that he had a fused spine and nerve damage to his leg.  (*Id*. ¶ 5; PageID ## 40:19, 21; 42:16; 43:3; 45:17; 60:6-8.)  Plaintiff also has a nonverbal learning disability and other cognitive limitations. (Amended Complaint ¶¶ 1, 14.)  Plaintiff did not inform Defendant Kinney of any cognitive limitations.  (*See* ECF No. 1-1 at PageID ## 37-64.)

Other officers subsequently arrived on the scene.  (Complaint ¶¶ 6-7; Complaint Exhibit, PageID ## 7; 41:21; 45:12; 47:18; 48:2; Amended Complaint ¶ 4.)  Defendant Kinney put Plaintiff onto the ground to put handcuffs on him, placing him under arrest for disorderly conduct and resisting arrest.  (Complaint Exhibit, PageID ## 7; 39:4-6.)  Plaintiff informed Defendant Kinney that he could not put his hands behind his back because of his spinal condition.  (Amended Complaint ¶ 5; Complaint Exhibit, PageID ## 45:9-46:8; 46:20-23; 52:12-13.)  Defendant Kinney handcuffed Plaintiff with his hands behind his back, although Defendant Kinney used two sets of handcuffs to do so.  (Complaint, PageID # 10 at ¶ 5; Complaint Exhibit, PageID # 46:22-47:5.)  Defendant Kinney told Plaintiff that he stopped Plaintiff because his registration had expired.  (Complaint Exhibit, PageID # 44.)

## DISCUSSION

Plaintiff appears to attempt to assert claims based on the violation of his constitutional rights under the Fourth and Fourteenth Amendments, the violation of the Americans with Disabilities Act (ADA), and the violation of the Racketeer Influenced and Corrupt Organizations Act (RICO). He also alleges the intentional infliction of emotional distress and seeks to initiate criminal proceedings.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." In reviewing a motion to dismiss under Rule 12(b)(6), a court "must evaluate whether the complaint adequately pleads facts that 'state a claim to relief that is plausible on its face.'" *Guilfoile v. Shields*, 913 F.3d 178, 186 (1st Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In doing so, a court "assume[s] the truth of all well-pleaded facts and give[s] the plaintiff the benefit of all reasonable inferences therefrom." *Id.* (quoting *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008)). The complaint, however, may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard." *Young*, 717 F.3d at 231. Federal Rule of Civil Procedure 12(b)(6) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To evaluate the sufficiency of the complaint, therefore, a court must "first, 'isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements,' then 'take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.'" *Zell v. Ricci*,

957 F.3d 1, 7 (1st Cir. 2020) (alteration omitted) (quoting *Zenon v. Guzman*, 924 F.3d 611, 615-16 (1st Cir. 2019)).

"A self-represented plaintiff is not exempt from this framework, but the court must construe his complaint 'liberally' and hold it 'to less stringent standards than formal pleadings drafted by lawyers.'"   *Waterman v. White Interior Sols.*, No. 2:19-cv-00032-JDL, 2019 U.S. Dist. LEXIS 191506, at *4 (D. Me. Nov. 5, 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

**1. Claims Against Defendants Pina, Place, Hall, and Farrar**

Plaintiff alleges no facts to suggest Defendant Pina engaged in any of the conduct about which Plaintiff complains, and he thus has not asserted an actionable claim against Defendant Pina.

Plaintiff alleges that Defendant Place was at the scene of and made three statements during Plaintiff's arrest.[4]  Plaintiff makes no other allegations specific to Defendant Place. Plaintiff alleges that Defendant Hall also made certain statements at the scene, but he makes no other allegations specific to Defendant Hall.[5]  As to the claim against Defendant Farrar, Plaintiff asserts that at the scene of the arrest, Defendant Farrar stated "Alright," perhaps in response to being informed of Plaintiff's identity, and requested other officers'

---

[4] Defendant Place is alleged to have stated, "Clean that up [inaudible] what's that?" (ECF No. 1-1, ¶ 31), and to have asked "Is that who it is?" in response to learning Plaintiff's identity. (*Id.* ¶ 32.)

[5] Defendant Hall gave Plaintiff's name to another officer who asked who Plaintiff was (*id.* ¶ 32), stated "Don't say it's alright," (*id.*), "You know he was wrong," (*id.* ¶ 33), and "They already [inaudible] it again?" (*Id.* ¶ 34).

assistance in helping Plaintiff to stand up.  (ECF No. 1-1, ¶ 32.)  None of the allegations

supports an actionable claim against Defendants Place, Hall, or Farrar.

**2.  Claims Against Defendant Kinney**

Although Plaintiff does not specifically cite the federal civil rights statute, several

of his claims involve allegations that his civil rights were violated during his arrest.

Pursuant to the statute:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage ... subjects, or causes to be subjected, any citizen of the United States
> or other person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be liable
> to the party injured in an action at law ....

42 U.S.C. § 1983.

"Section 1983 supplies a private right of action against a person who, under color

of state law, deprives another of 'any rights, privileges, or immunities secured by the

Constitution and [federal] laws.'"  *Gray v. Cummings*, 917 F.3d 1, 7 (1st Cr. 2019)

(alteration in original) (quoting 42 U.S.C. § 1983).  Section 1983 does not permit claims

for monetary damages against the state or its agencies.  *See Will v. Mich. Dep't of State*

*Police*, 491 U.S. 58, 64 (1989) ("[A] State is not a person within the meaning of § 1983");

*Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 124 (1st Cir. 2003) ("No cause of action for

damages is stated under 42 U.S.C. § 1983 against a state, its agency, or its officials acting

in an official capacity.")  However, "a state official in his or her official capacity, when

sued for injunctive relief, would be a person under § 1983 because 'official-capacity

actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S.

at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985); *see Dirrane v. Brookline Police Dep't*, 315 F.3d 65, 71-72 (1st Cir. 2002).

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  To maintain a claim under section 1983, a plaintiff must establish: "1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 45 (1st Cir. 1999).

### a.  Excessive Force Claim

The Fourth Amendment prohibits unreasonable searches and seizures and provides that no warrant shall issue except on a showing of probable cause.  U.S. Const. amend. IV. Excessive force claims are evaluated under the Fourth Amendment's "objective reasonableness" standard.  *Graham v. Connor*, 490 U.S. 386, 388 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (some internal quotation marks omitted) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).  In the context of force applied to make an arrest, the relevant factors for consideration include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and

whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (the so-called *Graham* factors).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.  A court's assessment must also account for the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396 – 97.  The test is an objective one: courts ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

Here, Plaintiff was stopped for an expired motor vehicle registration.  Although Plaintiff exited his car and questioned Defendant Kinney about the reason for the stop, the filings do not suggest that Plaintiff verbally or physically threatened Defendant Kinney prior to Defendant Kinney striking Plaintiff.  Whether Defendant Kinney's alleged physical contact with Plaintiff was objectively reasonable cannot be resolved without the development of a factual record.

### b. Due Process Claim

Plaintiff also claims a violation of his due process rights under the Fourteenth Amendment when Defendant Kinney allegedly falsified his police report and one or more other officers falsified or withheld dashcam evidence.  (Complaint, PageID # 10 at ¶ 9; Amended Complaint ¶¶ 5, 8.)

Plaintiff arguably attempts to assert a substantive due process claim. The substantive guarantee of the Due Process Clause "rests not on perceived procedural deficiencies but on the idea that the government's conduct, regardless of procedural swaddling, was in itself impermissible." *Amsden v. Moran,* 904 F.2d 748, 753 (1st Cir. 1990). "The substantive component of the Due Process Clause is violated by executive action when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Espinoza v. Sabol*, 558 F.3d 83, 87 (1st Cir. 2009) (quotation omitted); *see also*, *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006) (conduct must be "extreme and egregious," "truly outrageous, uncivilized, and intolerable," "stunning"). A plausible pleading, however, must do more than rely only on "labels," "conclusions," or "formulaic recitations of the elements," free from "further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Glob. Tower Assets, LLC v. Town of Rome*, 810 F.3d 77, 91 (1st Cir. 2016) ("the Applicants' vague allegations of conflicts of interest and financially motivated conspiracy do not—at least without far more—show that the Planning Board acted in the kind of conscience-shocking fashion that we require for substantive due process challenges to make it past the gate").

Plaintiff alleges that (1) two police dashcam videos provided to Plaintiff were presented under two different officer names but displayed the same video images (Complaint, PageID # 10 at ¶ 9), and (2) although Defendant Kinney's report states that he recorded the entire stop, Defendant Kinney's body mic was turned off on the trip to the jail, thereby failing to capture an exchange wherein Defendant Kinney asked if Plaintiff wanted to receive medical attention and Plaintiff responded, "As long as you're paying for

it let's go." (Amended Complaint ¶ 8.)   None of the alleged facts rises to the level of "conscience shocking" necessary to support a substantive due process claim.  *See Espinoza*, 558 F.3d at 87.

### 3.  Claims Against the City of Bangor

#### a.  Section 1983 Claim

Regardless of the merits of Plaintiff's claims against the individual defendants, Plaintiff has not asserted an actionable § 1983 claim against Defendant City of Bangor.  A municipality cannot be vicariously liable for a constitutional deprivation simply because the deprivation was caused by a municipal employee.  *Welch v. Ciampa,* 542 F.3d 927, 941 (1st Cir. 2008) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978)).  For a municipality to be liable for a constitutional deprivation, the record must include evidence that a municipal policy, custom, or practice caused the deprivation.  *Id.*  The applicable standard requires a plaintiff to "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cty. Comm'rs v. Brown,* 520 U.S. 397, 403 (1997).  Plaintiff has not identified a municipal policy or custom that resulted in the alleged deprivation of his constitutional rights.  Plaintiff, therefore, cannot prevail on a § 1983 claim against the City of Bangor.

#### b.  Americans with Disabilities Act (ADA) Claim

The First Circuit has noted that "the services, programs, and activities of a municipal police department are generally subject to the provisions of Title II of the ADA."  *Gray v. Cummings*, 917 F.3d 1, 16 (1st Cir. 2019) (citing *Haberle v. Troxell*, 885 F.3d 170, 179-80 (3d Cir. 2018); *Gorman v. Barth*, 152 F.3d 907, 912 (8th Cir. 1998)).  Title II of the ADA

provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

The First Circuit has not, however, determined the extent to which Title II of the ADA applies to "ad hoc" police encounters such as the one at issue here, noting that other circuit courts have taken various approaches to the issue. *Gray*, 917 F.3d at 16-17 (collecting cases). In *Gray*, the First Circuit assumed without necessarily deciding that Title II applies to such encounters and that "exigent circumstances may shed light on the reasonableness of an officer's actions." *Id*. at 17.

A question also exists as to whether a municipality can be vicariously liable[6] for damages under Title II based on the conduct of an employee police officer. Again, the First Circuit noted the split of authority on this question, but in *Gray* assumed without deciding that a town could be vicariously liable for an officer's actions.[7] *Id*. at 17 (collecting cases).

---

[6] Plaintiff has not alleged that the policies of the City of Bangor caused a failure to respond appropriately to a pattern of past occurrences of injuries such as his, nor has he alleged that that the risk of such harm from the City's policies was obvious. *See Haberle*, 885 F3d at 181 (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 136 (3d Cir. 2001)). Indeed, Plaintiff alleges in his amended complaint that the officers at the scene "knew how to de-escalate a situation," citing Bangor Police Department training. (Amended Complaint at PageID # 158, ¶ 18.) Plaintiff thus fails to state a claim for direct liability under the ADA against the City of Bangor.

[7] Plaintiff also requests injunctive relief against the City of Bangor. (*See, e.g.*, ECF No. 1-1 at PageID # 8, ¶¶ 1, 6, 8, 9, 11; Amended Complaint at PageID # 159, ¶¶6, 7, 8, 10.) "Past injury, in and of itself, 'is an insufficient predicate for equitable relief.'" *Gray*, 917 F.3d at 19 (quoting *Am. Postal Workers Union v. Frank*, 968 F.2d 1373, 1376 (1st Cir. 1992)). "To have standing to pursue injunctive relief, a plaintiff must 'establish a real and immediate threat' resulting in 'a sufficient likelihood that he will again be wronged in a similar way.'" *Gray*, 917 F.3d at 19 (quoting *Am Postal Workers Union*, 698 F.2d at 1373)). Plaintiff

Finally, there is the question of whether deliberate indifference can support a claim for damages under Title II, given that a plaintiff must plead and prove "intentional discrimination" on the part of the municipal entity.  While uncertainty exists among other circuit courts, the Court in *Gray* assumed that "deliberate indifference is the appropriate standard."  *Id*. (collecting cases).

On a review of Plaintiff's allegations at this stage of the proceedings, adoption of the assumptions made by the First Circuit in *Gray* is reasonable.  To state a claim for a violation of Title II, a plaintiff must allege

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Buchanan v. Maine*, 469 F.3d 158, 170-71 (1st Cir. 2006) (quoting *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 5 (1st Cir. 2000)).

Plaintiff alleges that he is disabled.  The City of Bangor is a public entity.  The First Circuit has identified two general theories for meeting the second prong of a claim under Title II when an officer is alleged to have violated the ADA in executing an arrest:

> The first such theory (which we shall call the "effects" theory) holds that a violation may be found when "police wrongly arrested someone with a disability because they misperceived the effects of that disability as criminal activity."  *Gohier v. Enright*, 186 F.3d 1216, 1220 (10th Cir. 1999).  The second such theory (which we shall call the "accommodation" theory) holds that a violation may be found when police officers "properly investigated and arrested a person with a disability for a crime unrelated to that disability,

has alleged no facts suggesting that there is a "real and immediate threat of ongoing harm," and has failed to state a claim for injunctive relief against the City of Bangor under the ADA.  *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 306 (1st Cir. 2003).

[but] they failed to reasonably accommodate the person's disability in the course of the investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." *Id.* at 1220-21.

*Gray*, 917 F.3d at 15.

Plaintiff's allegations could be construed to assert a claim under both theories. As to the "effects" theory, Plaintiff alleges that his behavior following the traffic stop is the result of his learning and cognitive disabilities. Under this theory, Defendant Kinney is alleged to have misperceived Plaintiff's failure to follow his commands to return to his car as a crime rather than a symptom of Plaintiff's disabilities. Plaintiff does not allege, however, that he ever informed Defendant Kinney during the stop that he had any cognitive disabilities. Furthermore, the transcript of the incident does not suggest that Defendant Kinney was aware of Plaintiff's cognitive disabilities, or that he could have or should have inferred them. Plaintiff, therefore, has not asserted an actionable claim under the "effects" theory.[8]

With respect to the "accommodation" theory, according to Plaintiff, he informed the officers that his fused spine interfered with his ability to put his hands behind his back and doing so caused him extreme discomfort. Defendant Kinney nevertheless handcuffed him in that position. Defendants argue that Defendant Kinney's use of two handcuffs was reasonable. (Motion at 7.) Resolution of the issue of reasonableness requires the

---

[8] Plaintiff also appears to assert that his rights under the ADA and the First Amendment were violated by Defendant Kinney's refusal to "timely answer" Plaintiff's questions as to why he had been pulled over. (Complaint, PageID # 10 at ¶ 8.) There is no basis under either the ADA or First Amendment jurisprudence for such a claim.

development of a factual record.  Dismissal of Plaintiff's alleged Title II ADA claim against the City of Bangor, therefore, is not warranted at this stage of the proceedings.

### 4. Other Claims against Defendants

#### a. Request for Criminal Prosecution

Plaintiff alleges Defendants have committed various federal and/or state crimes and seeks Defendants' criminal prosecution in his request for relief.  To the extent Plaintiff seeks to institute criminal proceedings, Plaintiff does not have standing to pursue criminal charges against any of the Defendants.  *United States v. Nixon*, 418 U.S. 683, 693 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case"); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (private citizens lack a judicially cognizable interest in the criminal prosecution of another); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989); *Briand v. Lavigne*, 223 F. Supp. 2d 241, 251 (D. Me. 2002).

#### b. RICO Claim

"The Racketeer Influenced and Corrupt Organizations Act …, 18 U.S.C. §§ 1961–1968, provides a private right of action for treble damages to '[a]ny person injured in his business or property by reason of a violation' of the Act's criminal prohibitions."  *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 641 (2008) (citing 18 U.S.C. § 1964(c)). Such a claim "requires proof of several elements including the existence of a racketeering 'enterprise' and its conduct through a 'pattern' of racketeering activity."  *Rectrix Aerodrome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n*, 610 F.3d 8, 11 (1st Cir. 2010)

(citing 18 U.S.C. § 1961(4) – (5)).  Racketeering activity is defined to include a list of criminal offenses.  18 U.S.C. § 1961(1).

Plaintiff alleges that Defendants engaged in a pattern of withholding, destroying, or modifying evidence along with witness intimidation.  (Amended Complaint ¶¶ 56, 88.) Plaintiff, however, has not alleged any facts that constitute criminal conduct or that would otherwise support a RICO claim.

### c.  Intentional Infliction of Emotional Distress Claim

An intentional infliction of emotional distress claim brought against a "governmental entity" such as the City of Bangor is limited by the Maine Tort Claims Act (MTCA).  *Id.* § 2-807(4); *see* 14 M.R.S. 8104-C. Under the MTCA, to assert an action against a governmental entity or its employees, a claimant must first file a notice with the governmental entity "[w]ithin 365 days after any claim or cause of action" accrues.  14 M.R.S. § 8107(1).   Additionally, the MTCA provides that "[e]very claim against a governmental entity or its employees permitted under this chapter is forever barred from the courts of this State, unless an action therein is begun within 2 years after the cause of action accrues."  14 M.R.S. § 8110.   Maine law "define[s] the time of accrual as the time the plaintiff sustains a judicially cognizable injury."  *McKinnon v. Honeywell Int'l, Inc.*, 2009 ME 69, ¶ 11, 977 A.2d 420 (internal quotation marks omitted).

The events about which Plaintiff complains here occurred on April 16, 2018. Plaintiff filed his complaint on August 6, 2020.  The record lacks any evidence or assertion that Plaintiff filed a notice of tort claim with the City of Bangor or any of the other defendants.  Moreover, Plaintiff did not file his complaint within the applicable two-year

limitations period. *See* 14 M.R.S. §§ 8107, 8110.  Plaintiff, therefore, cannot maintain a claim for the intentional infliction of emotional distress against Defendants.

CONCLUSION

Based on the foregoing analysis, I deny Plaintiff's motion to appoint counsel and grant Plaintiff's motion to amend his complaint to reinstate his claim against the City of Bangor.  The operative pleading consists of the amended complaint filed by Plaintiff on October 26, 2020 (ECF No. 7) and Plaintiff's allegations in his original complaint (ECF No. 1) against the City of Bangor and the defendants named in both the original complaint and the amended complaint.

I also recommend the Court:

1.  Grant Defendants' motion to dismiss all claims against Defendants Pina, Place, Hall, and Farrar.

2.  Grant Defendants' motion to dismiss all claims against Defendant City of Bangor except Plaintiff's claim under Title II of the ADA.

3.  Grant Defendants' motion to dismiss all claims against Defendant Kinney except Plaintiff's § 1983 claim for excessive force.

**NOTICE**

Any objection to the order denying the motion to appoint counsel or the order granting in part the motion to amend shall be filed in accordance with Federal Rule of Civil Procedure 72.

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen

18

(14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 13th day of April, 2021.